McKOOL SMITH, P.C.
Robin L. Cohen (rcohen@mckoolsmith.com)
Kenneth H. Frenchman (kfrenchman@mckoolsmith.com)
Jillian Raines (jraines@mckoolsmith.com)
One Bryant Park, 47th Floor
New York, NY 10036

*Attorneys for Plaintiff Standard General L.P.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANDARD GENERAL L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| THE TRAVELERS INDEMNITY COMPANY | ) |
| OF CONNECTICUT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Standard General L.P. ("Standard"), by and through its undersigned counsel, for

its Complaint against Defendant The Travelers Indemnity Company of Connecticut ("Travelers" or

"Defendant"), alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is an action for declaratory relief, as well as for damages for breach of

contract, arising out of Defendant's repudiation and breach of its obligations under primary and

excess umbrella general commercial liability insurance policies (the "Policies") issued to

Standard, providing for the defense and payment of all expenses incurred by Standard, in

defending against a lawsuit brought against it by the former CEO and Chairman of the Board of

American Apparel, Dov Charney, alleging, among other things, that Standard, a hedge fund

specializing in distressed company investments, broadcast a publicity campaign and engaged in false advertising, which defamed Charney and placed him in a false light, impeding his ability to work for clothing companies, engage in investments with the apparel industry, start competing clothing companies, and obtain investment financing.

2.      In direct violation of the terms of the Policies, Defendant has impermissibly denied coverage for, and refused to provide a defense or pay any portion of the expenses Standard has incurred in defending against, the civil proceeding brought by Charney in the Superior Court of California, captioned *Charney v. Standard General L.P., et al.*, Case No. BC581130 (the "Charney Action").

3.      Standard's costs defending against the Charney Action fall precisely within the coverage provided by Defendant's Policies, which provide protection against, among other things, suits alleging damages resulting from "personal injury" or "advertising injury."

4.      As a result, Standard now seeks a declaration as to the existence, scope and breach of Defendant's obligations to defend Standard and pay all of Standard's expenses arising from the Charney Action, and damages for Defendant's breach of contract for refusing to comply with its defense obligations owed to Standard under the Policies.

**PARTIES**

5.      Plaintiff Standard is a limited partnership incorporated under the laws of Delaware with its principal place of business in New York.  Standard operates as a New York-based investment firm that specializes in event-driven management funds and distressed company investments, including those with complex capital structures that are undergoing dramatic change.

6.      Upon information and belief, Defendant The Travelers Indemnity Company of Connecticut is a corporation incorporated in Connecticut with its principal place of business in

2

Connecticut.  At all material times, on information and belief, Travelers has conducted

substantial business within the State of New York, including engaging in the business of selling

insurance, investigating claims, and/or issuing policies that cover policyholders or activities

located in New York.  Upon information and belief, Travelers issued the Policies at issue herein

from its office located in New York, New York.

<strong>JURISDICTION AND VENUE</strong>

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332.  This action is between citizens of different States, and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b).

<strong>FACTUAL BACKGROUND</strong>

**A.      THE INSURANCE POLICIES**

9.      Defendant issued primary commercial general liability policy no. I-660-

2D920156-TCT-14 to Standard, providing coverage to Standard as the "named insured" during

the Policy Period from September 1, 2014 to September 1, 2015 (the "Primary Policy").  The

Primary Policy has an aggregate limit of liability of $2 million, and a $1 million limit of liability

for all losses arising from "personal injury" and "advertising injury."

10.     A true and correct copy of the Primary Policy is attached hereto as Exhibit A.

11.     Defendant also sold excess umbrella commercial general liability insurance policy

no. CUP-2D921177-14-42 to Standard, providing coverage to Standard as the "named insured"

during the Policy Period from September 1, 2014 to September 1, 2015 (the "Excess Policy").

The Excess Policy has an aggregate limit of liability of $5 million, and a $5 million limit for all

3

"personal injury" and "advertising injury" per person or organization, subject to the aggregate limit.

12.     A true and correct copy of the Excess Policy, is attached hereto as <u>Exhibit B</u>.

13.     The Primary Policy expressly provides that Defendant "will have the right and duty to defend the insured against any 'suit'" seeking damages, and that, "with respect to any claim we investigate or settle, or any 'suit' against an insured we defend," Defendant will pay all defense costs, which "will not reduce the limits of insurance" provided to Standard.

14.     Specifically, under the Primary Policy's Commercial General Liability Coverage Form CG 00 01 10 01, as amended by endorsement, Defendant also agreed to pay those sums that Standard (as the "named insured") becomes legally obligated to pay as damages because of "personal injury" and "advertising injury."

15.     The Excess Policy designates the Primary Policy as the applicable underlying policy in its "Schedule of Underlying Insurance," and provides that Defendant will "have the right and duty to defend any 'suit' for damages," not payable under the Primary Policy due to exhaustion "by the payment of claims" of the Primary Policy.

16.     The Excess Policy further provides that Defendant will pay on Standard's behalf, the "ultimate net loss" in excess of the Primary Policy's limit, which Standard becomes legally obligated to pay as damages because of "personal injury" or "advertising injury."

17.     Under the Policies, "suit" is defined to mean:

> a civil proceeding in which damages because of . . . "personal injury" or "advertising injury" to which this insurance applies are alleged.

18.     Under the Policies, "personal injury" is defined as:

> injury . . . caused by one or more of the following offenses: . . .

* * *

(4) Oral or written publication, including publication by electronic means, of material that slanders or libels a person . . . or disparages a person's . . . goods, products or services . . .;
(5) Oral or written publication, including publication by electronic means, of material that:

* * *

(b) Unreasonably places a person in a false light; . . .

19.    Under the Policies, "advertising injury" is defined as:

injury . . . caused by one or more of the following offenses:

(1) Oral or written publication, including publication by electronic means, of material in your 'advertisement' that slanders or libels a person . . . or disparages a person's . . . goods, products or services . . .;
(2) Oral or written publication, including publication by electronic means, of material in your 'advertisement' that:

* * *

(b) Unreasonably places a person in a false light; . . .

20.    The Primary Policy defines "advertisement" as:

a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; . . .

**B.    THE CHARNEY ACTION**

21.    On May 7, 2015, Dov Charney brought an action against Standard in the Superior

Court of California, Los Angeles County, alleging defamation, false light, intentional

interference with actual and prospective economic relations, and unfair business acts and false advertising in violations of California Business & Professions Code §§ 17200, *et seq*.

22.      In the Charney Action complaint, a true and correct copy of which is attached hereto as <u>Exhibit C</u>, Charney claimed that in December 2014, after Charney's June 2014 termination as CEO and Chairman of the American Apparel Board, Standard engaged in a "publicity campaign designed to destroy Charney's personal and professional reputation," including by falsely informing press outlets that Charney was terminated from his position of CEO of clothing outlet American Apparel for "cause" based on an "independent investigation" conducted by a "third party."

23.      The Charney Action complaint alleges that:

a.      On or around December 22, 2014, Standard spokesperson, Liz Cohen, from a public relations agency, made comments to press outlets regarding Charney that contained "defamatory falsehoods," including that Standard "supported the independent, third party and very thorough investigation into the allegations against Mr. Charney, and respect the board of director's decision to terminate him based on the results of that investigation."

b.      These statements were purportedly false and defamatory, and were made following Standard's failure to carry out its offer to Charney to assist him in securing necessary financing to reassert control over American Apparel following his termination as CEO and removal from the American Apparel Board of Directors.

c.      Standard's purported defamatory statements and publicity campaign impeded Charney's prospective and actual business prospects, including his

ability to engage in passive investments within the apparel industry, to start

another competing clothing company to American Apparel, and to obtain

financing for the same.

      d.     Standard's purported defamatory statements and publicity campaign

wrongful acts constituted "unfair business acts" and "false advertising" within the

meaning of California's Business & Professions Code.

24.     The Charney Action complaint seeks as relief, among other things, damages in

excess of $20 million against Standard, as a result of its alleged defamation, false light, and false

advertising.

25.     A Statement of Decision granting Standard's anti-SLAPP motion in the Charney

Action, and dismissing the Charney Action complaint with prejudice, was signed and filed on

October 30, 2015.  Dov Charney has since appealed that judgment and the Charney Action is

currently pending before the Appellate Division.

26.     To date, Standard has incurred expenses in defending against the Charney Action

in excess of $300,000.

**C.     <u>DEFENDANT'S REFUSAL TO DEFEND STANDARD FOR THE CHARNEY
ACTION</u>**

27.     Standard timely notified Defendant of the Charney Action under the Policies and

requested that Defendant provide a defense and pay Standard's defense expenses.

28.     On or around June 10, 2016, Defendant wrote to Standard to provide its "formal

coverage evaluation."  This evaluation asserted that the Charney Action was not covered under

the Policies, asserting that the conduct alleged did not fall under the Policies' definition of

"advertising injury."

7

29.     Defendant also asserted, despite its obligation to provide its broad defense

obligation, that two exclusions, including an unrelated "EMPLOYMENT-RELATED

PRACTICES EXCLUSION" and a "Material Published With Knowledge Of Falsity" Exclusion,

applied to preclude any obligations it had to Standard for the Charney Action.

30.     In fact, the allegations of the Charney Action complaint fall squarely within the

scope of coverage provided by the Policies, and do not fall within either of the exclusions cited

by Defendant.

31.     Defendant thus wrongfully disclaimed all obligations it has to "defend or

indemnify Standard" for the Charney Action.

32.     On or about August 17, 2016, through outside counsel, Standard responded to

Defendant, challenging its coverage denial, clarifying that the Charney Action allegations fall

squarely within the Policies' plain language definitions of both "advertising injury" and/or

"personal injury."

33.     Standard's August 17, 2016 letter further explained that the Employment-Related

Practices Exclusion was entirely inapplicable given that no employment-related defamation or

false light claims were alleged within the Charney Action complaint, and because Charney was

not an employee of American Apparel at the time of Standard's alleged defamatory statement,

and was never engaged in any employment relationship with Standard.  Standard also

highlighted that the Charney Action includes allegations of defamation based on reckless

disregard, and thus, the Material Published With Knowledge of Falsity Exclusion could not

apply, particularly to Traveler's broad defense obligations.

34.     Two months later, however, on or about October 11, 2016, Defendant wrote to Standard reiterating its wrongful denial of its defense and indemnity obligations to Standard under the Policies.

35.     To date, Defendant has refused to provide Standard with a defense or pay any of Standard's defense costs incurred in successfully obtaining a favorable judgment in the Charney Action in the Superior Court of California, and presently in defending against the appeal of that decision.

### FIRST CAUSE OF ACTION
### (Declaratory Relief – Duty to Defend and Pay All Defense and Indemnity Expenses in the Charney Action)

36.     Standard repeats and re-alleges the allegations set forth in the preceding paragraphs 1-35 of this Complaint as if fully set forth herein.

37.     Pursuant to the terms of the Policies, Defendant agreed to provide a defense to Standard, and to pay all defense and indemnity expenses incurred on Standard's behalf, resulting from any "suit" seeking damages as a result of "advertising injury" or "personal injury," as those terms are defined in the Policies.

38.     Pursuant to the terms of the Policies, the Charney Action constitutes a "suit" alleging "advertising injury" and/or "personal injury," as those terms are defined in the Policies, and there are no applicable provisions that would apply to exclude coverage.

39.     Upon the triggering and attachment of the Policies, Defendant is obligated to provide a defense to Standard, and to pay all defense and indemnity expenses on Standard's behalf, relating to the Charney Action.  Defendant has disputed and refused to honor these obligations.

40.     The controversy between Standard and Defendant is ripe for judicial decision.  A justiciable controversy exists between the parties regarding the existence and scope of Defendant's obligations under the Policies to defend Standard, and to pay all of Standard's defense and indemnity expenses relating to the Charney Action.

41.     Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment in favor of Standard and against Defendant, declaring that Defendant is obligated to provide Standard a defense in the Charney Action, and to pay all defense and any indemnity expenses ultimately incurred on Standard's behalf therein, subject to the applicable attachment points and limits.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Duty to Defend and Pay All Defense Expenses in the Charney Action)

42.     Standard repeats and re-alleges the allegations set forth in the preceding paragraphs 1-41 of this Complaint as if fully set forth herein.

43.     Pursuant to the terms of the Policies, Defendant agreed to provide a defense to Standard, and to pay all defense expenses on Standard's behalf, resulting from any "suit" seeking damages as a result of "advertising injury" or "personal injury," as those terms are defined in the Policies.

44.     Pursuant to the terms of the Policies, the Charney Action constitutes a "suit" alleging "advertising injury" and/or "personal injury," as those terms are defined in the Policies, and there are no applicable provisions that would apply to exclude coverage.

45.     Standard has fully complied with all terms, conditions and prerequisites to coverage set forth in Policies, or has been excused from compliance with such terms, conditions or prerequisites as a result of Defendant's breaches and/or other conduct.

46.     Defendant has failed to fulfill its obligations to provide Standard a defense for the Charney Action, and to pay all defense expenses incurred on Standard's behalf, subject to the Policies' respective policy attachment points.

47.     As a result of Defendant's breach of its obligation to provide Standard a defense and cover all defense expenses incurred in the Charney Action, subject to the Policies' respective attachment points and limits, Standard has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Standard prays for relief as follows:

(a) On the First Cause of Action, Standard requests that the Court enter a declaratory judgment in favor of Standard and against Defendant, declaring that Defendant is obligated to defend Standard and pay Standard's defense and any indemnity expenses ultimately incurred in connection with the Charney Action, subject to the Policies' applicable attachment points and limits;

(b) On the Second Cause of Action, Standard requests that the Court enter judgment against Defendant, awarding Standard compensatory and consequential damages in an amount to be determined in this action;

(c) On all Causes of Action, Standard requests that the Court award Standard all costs incurred as a consequence of having to prosecute this lawsuit, including attorneys' fees, as well as pre-judgment and post-judgment interest; and

(d) Additionally, Standard requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Standard hereby demands a trial by jury on all issues so triable.

MCKOOL SMITH, P.C.

By: _____
Robin L. Cohen
Kenneth H. Frenchman
Jillian Raines
One Bryant Park – 47th Floor
New York,  NY 10036
Telephone: (212) 402-9400
Facsimile:  (212) 402-9444

*Attorneys for Plaintiff*

Dated: January 25, 2017