Thomas A. Martin, Esq.
Philip H. Kalban, Esq.
PUTNEY, TWOMBLY, HALL & HIRSON LLP
521 Fifth Avenue
New York, New York  10175
(212) 682-0020
tmartin@putneylaw.com
pkalban@putneylaw.com

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANDARD GENERAL L.P., <br><br> Plaintiff, <br><br> v. <br><br> THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, <br><br> Defendant. | Case No. 1:17-cv-00548 (WHP) (GWG) <br><br> **TRAVELERS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1** |

Defendant The Travelers Indemnity Company of Connecticut ("Travelers") respectfully submits this Response to the Statement of Plaintiff Standard General L.P. ("Standard") pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York in response to Plaintiff's Rule 56.1 Statement, and to set forth the material facts as to which Travelers contends there are no genuine issues to be tried and require entry of summary judgment in favor of Travelers and:

1. Plaintiff is a limited partnership incorporated under the laws of Delaware with its principal place of business in New York. Standard operates as a New York-based investment firm that specializes in event-driven management funds and distressed company investments,

including those with complex capital structures that are undergoing dramatic change. (*See* Steiner Aff. Ex. 1, ¶ 5.)

> TRAVELERS' RESPONSE: Not disputed. [?]

2. On May 7, 2015, Dov Charney sued Standard for, *inter alia,* defamation, false light, and false advertising by Dov Charney, (the "*Charney* Action"). (*See generally* Steiner Aff. Ex. 3.)

> TRAVELERS' RESPONSE: Disputed that "Dov Charney sued Standard for…false advertising by Dov Charney," and assert that Dov Charney sued Standard for, *inter alia*, unfair business acts and false advertising *of* Dov Charney. Steiner Aff. Ex. 1 at 20, ¶¶ 73-74.

3. The *Charney* complaint alleged that, following Charney's termination, "American Apparel's Board launched a campaign designed to harass, intimidate, and slander Charney." (*See* Steiner Aff. Ex. 3 ¶ 15.)

> TRAVELERS' RESPONSE: Not disputed that the quoted language is in the *Charney* Complaint. The *Charney* Complaint further alleges that Standard General "falsely claimed to the press and general public that Plaintiff Charney's employment as American Apparel CEO and Chairman of the Board was terminated for "cause" based on the results of a purportedly "independent investigation conducted by a "third party." (Steiner Aff. Ex. 1 d. 1) and further alleges that "on or around December 15, 2014, the Standard General-controlled American Apparel wrote Charney terminating his employment with American Apparel for 'cause.'" Steiner Aff. Ex. 1 at 13, ¶41.

4.  The Charney complaint also alleged Standard sought to "reinforc[e] Charney's exit from the company and entrench[] Standard General's control over the same, to Charney's and minority shareholders' detriment." (*Id.* ¶ 22.)

> TRAVELERS' RESPONSE: Disputed in that the Charney Complaint alleged that a "*Standstill Agreement's investigation* was to be a ... means of reinforcing Charney's exit from the company and entrenching Standard General's control over the same...," and in that Standard failed to submit with its motion the Standstill Agreement, Exhibit C to the Charney Complaint. Id. at 8, ¶¶ 21-22 (emphasis added). (Martin Dec. Ex. E.) The Charney Complaint further alleges that Standard General controlled American Apparel and the "Standard General-controlled American Apparel Board of Directors...." *Id.* at 2, ¶1.

5.  In his complaint, Mr. Charney claimed that Standard launched "an anti-Charney publicity campaign designed to destroy Charney's personal and professional reputation." (*Id.* ¶ 43.)

> TRAVELERS' RESPONSE: Not disputed that the quoted language appears in the *Charney* Complaint. The Charney Complaint further alleges that "Standard General effectively took over American Apparel by and through its control of company stock and the Board of Directors." *Id.* at 7, ¶19.

6.  The *Charney* complaint asserts by making these statements that were "subsequently republished online and which were repeated throughout media outlets around the world, [Standard] has created publicity that placed [Charney] in a false light in the public eye." (*Id.* ¶55.)

TRAVELERS' RESPONSE: Not disputed that the quoted language appears in the *Charney* Complaint.

7. The complaint filed in the *Charney* action plead five causes of action: 1) defamation; 2) false light; 3) intentional interference with actual economic relations; 4) intentional interference with prospective economic relations; and 5) violations of *Business & Professions Code* §§ 17200, et. seq. (*Id.* ¶¶ 47-75.)

TRAVELERS' RESPONSE: Not disputed.

8. On October 30, 2015, the California Superior Court filed its Statement of Decision granting Standard's anti-SLAPP motion and dismissing the *Charney* Action complaint with prejudice. (*See generally* Steiner Aff. Ex. 4.)

TRAVELERS' RESPONSE: Disputed in that Standard failed to attach the full Statement of Decision (Martin Dec. Ex. D), which states, *inter alia*:

> The natural and popular construction that the average reader would give to the statement in its full context is that it was a commentary on American Apparel's decision to terminate Plaintiff, not a statement about Plaintiff's own conduct or character. Plaintiff has made no prima facie showing that the statement reasonably implies that the Defendants were imputing wrongdoing to Plaintiff himself.
> …
> The natural and popular construction that the average reader would give to the statement in its full context is that "independent, third party investigation" refers to an investigation overseen by an independent committee of American Apparel's board, not an investigation independent of any of the board members themselves.

Martin Dec. Ex. C at 2, ¶7(a)(b).

9. Dov Charney thereafter appealed that judgment in Standard's favor before the Court of Appeal of the State of California, Second Appellate District. On March 28, 2017, the California appeals court affirmed the judgment for Standard. (*See generally* Steiner Aff. Ex. 5.)

4

TRAVELERS' RESPONSE: Not disputed.

10.     On May 5, 2017, Dov Charney filed a Petition for Review in the Supreme Court of the State of California. (*See generally* Steiner Aff. Ex. 6).

TRAVELERS' RESPONSE: Not disputed.

11.     Travelers issued primary commercial general liability policy no. I-660-2D920156-TCT-14 (the "Policy"), providing coverage to Standard as the "named insured" during the policy period of September 1, 2014 to September 1, 2015. (*See generally* Steiner Aff. Ex. 2.)

TRAVELERS' RESPONSE: Not disputed as to the primary policy. Travelers also issued a Commercial Excess Liability (Umbrella) Insurance Policy No. CUP-2D921177-14-42 naming Standard General as the named insured for the same policy period. (Martin Dec. Ex. C.)

12.     The Policy provides $1 million in limits for all losses arising from both "personal injury" and "advertising injury," and expressly provides that Travelers "will have the right and duty to defend" Standard against any "suit" seeking damages. (*Id.* at CGL Part, § I, Coverage B ¶ 1(a).)

TRAVELERS' RESPONSE: Disputed. Coverage B1a provides that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal [injury or] advertising injury' *to which this insurance applies.* [Travelers] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Travelers] will have *no* duty to defend the insured against any 'suit' seeking damages for 'personal [injury or] advertising injury' to which this insurance does not apply." (Emphasis added.) (Martin Dec. Ex. B.)

13. "Suit" is defined in the Policy as "a civil proceeding in which damages because of . . . ['personal injury' or 'advertising injury'] to which this insurance applies [is] alleged." (*Id.* at CGL Part, § V(18); *id.* at CGL Part, Amendment of Coverage B Endorsement ("Cov. B End."), § A.)

TRAVELERS' RESPONSE: Not disputed.

14. Under the Policy, "advertising injury" is defined, in relevant part, as injury caused by "[o]ral or written publication, including publication by electronic means, of material in your 'advertisement' that slanders or libels a person . . . or disparages a person's . . . goods, products or services . . ." or that "unreasonably places a person in a false light." (*Id.* at CGL Part, Cov. B End., § F.)

TRAVELERS' RESPONSE: Not disputed.

15. "Advertisement" is defined very broadly as any notice "broadcast or published to the general public . . . about [Standard's] goods, products or services for the purpose of attracting customers or supporters." (*Id.* at CGL Part, § V(1).) (Martin Dec. Ex. B.)

TRAVELERS' RESPONSE: Disputed. "Advertisement" is defined. It is not "defined very broadly." Travelers does not dispute that the term "advertisement" is defined as "a notice broadcast or published to the general public…about [Standard's] goods, products or services for the purpose of attracting customers or supporters."

16. "Personal injury" under the Policy expressly includes injury caused by "oral or written publication, including publication by electronic means," of any "material that slanders or libels a person . . . or disparages a person's . . . goods, products or services . . . ," or that "unreasonably places a person in a false light." (*Id.* at CGL Part, Cov. B End., § F.)

6

TRAVELERS' RESPONSE: Not disputed that the segmented quoted language appears in the Policy. Travelers further states:

Coverage B of the GL Policy provides in relevant part:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ["personal injury or advertising injury"] to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply…

…

**SECTION V – DEFINITIONS**[1]

1. "Advertisement" mean a notice that is broadcast to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters. …

"Advertising injury":

a. Means injury… caused by one or more of the following offenses:

(1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

(2) Oral or written publication, including publication by electronic means, or material in your "advertisement" that:

…

---

[1] As amended by the "Amendment of Coverage B- Personal and Advertising Injury Liability" endorsement [form CG D4710209] in the GL Policy and the "Amendment of Coverage B- Personal and Advertising Injury Liability" endorsement [form UM 05 11 02 09] in the Umbrella Policy.

7

> (b) Unreasonably places a person in a false light…

"Personal injury"

> **a.** Means injury caused by one or more of the following offenses:
>
>> …
>>
>> **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services, provided that the claim is made or the "suit" is brought by a   person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;
>>
>> **(5)** Oral or written publication, including publication by electronic means, of material that:
>>
>>> …
>>>
>>> **(b)** Unreasonably places a person in a false light…

(Martin Dec. Ex. B)

17. The policy contains an ERP exclusion. This exclusion only applies to a personal injury, and not advertising injuries. In relevant part, it states coverage does not apply to a personal injury to a person arising out of any: "(a) Refusal to employ that person; (b) Termination of that person's employment; or (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." (*Id.* at CGL Part, ERP Exclusion Endorsement, § B.)

TRAVELERS' RESPONSE:  Disputed.  The language of the exclusion is as follows:

This insurance does not apply to:
"Personal Injury" to:
  (1) A person arising out of:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or

8

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraph (a), (b), or (c) above is directed.

This exclusion applies:
**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Martin Dec. Ex. B.

Dated: New York, New York
      June 15, 2017

                              PUTNEY, TWOMBLY, HALL & HIRSON LLP
                              Attorneys for Defendant The Travelers Indemnity
                              Company of Connecticut

                              By: _____/S/_____
                                        Thomas A. Martin