**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANDARD GENERAL L.P.,  )<br>)<br>Plaintiff,  )<br>)<br>)<br>v.  )<br>)<br>THE TRAVELERS INDEMNITY COMPANY  )<br>OF CONNECTICUT,  )<br>)<br>Defendant.  )<br>)<br>_____)  | Case No. 1:17-cv-00548 (WHP) (GWG)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF STANDARD'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO TRAVELERS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

MCKOOL SMITH, P.C.

Robin L. Cohen
Adam S. Ziffer
Jillian Raines

One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9804
rcohen@mckoolsmith.com
aziffer@mckoolsmith.com
kfrenchman@mckoolsmith.com
jraines@mckoolsmith.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     AS A MATTER OF BEDROCK NEW YORK AND CALIFORNIA LAW, TRAVELERS CANNOT AVOID ITS CLEAR DUTY TO DEFEND ..............................2

II.    TRAVELERS CANNOT IGNORE ITS POLICY DEFINITION OF "ADVERTISEMENT" TO JUSTIFY DENYING COVERAGE ........................................3

       A.  Standard's Publicity Statement Promoted *Standard's* Investment Services And Solicited Support From Customers And Clients ....................................................3

       B.  Travelers' Claim That Standard's Reading Of "Advertisement" Is "Unnatural" Relies On Travelers' Own Rejection Of The Policy Definition ...............5

       C.  Travelers' Focus On The *Charney* Statement Of Decision Or The Relief Sought In Charney's False Advertising Claim Should Be Rejected ..............................7

III.   TRAVELERS HAS NOT ESTABLISHED AS A MATTER OF LAW THAT ITS CONSTRUCTION OF THE ERP EXCLUSION IS THE ONLY REASONABLE ONE – OR THAT IT APPLIES TO THE ALLEGATIONS HERE ...................................8

CONCLUSION................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*,
   545 N.E.2d 1206 (N.Y. 1989) ..................................................................................................6

*AmGuard Ins. Co. v. Cnty. Plaza Assocs. Inc.*,
   No. 13-CV-5205, 2014 WL 3016544 (E.D.N.Y. July 3, 2014)..............................................8, 9

*Berman v. Gen. Accident Ins. Co. of Am.*,
   671 N.Y.S.2d 619 (Sup. Ct., N.Y. Cnty. 1998) ......................................................................4, 8

*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*,
   812 F. Supp. 2d 527 (S.D.N.Y. 2011), *aff'd*,
   559 F. App'x 15 (2d Cir. 2014) .................................................................................................7

*Cont'l Cas. Co. v. Rapid-Am Corp.*,
   581 N.Y.S.2d 669 (App. Div. 1992), *aff'd*,
   609 N.E.2d 506 (N.Y. 1993)................................................................................................... 10

*EKCO Grp., Inc. v. Travelers Indem. Co. of Ill.*,
   273 F.3d 409 (1st Cir. 2001).....................................................................................................6

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   590 F. Supp. 2d 1244 (N.D. Cal. 2008) ....................................................................................5

*George S. May Int'l Co. v. Arrowpoint Capital Corp.*,
   2011-1865 (La. App. 1 Cir. 8/10/12); 97 So.3d 1167.............................................................10

*Hosel & Anderson, Inc. v. ZV II, Inc.*,
   No. 00-CV-6957, 2001 WL 392229 (S.D.N.Y. Mar. 21, 2001) ...............................................3

*HS Servs., Inc. v. Nationwide Mut. Ins. Co.*,
   109 F.3d 642 (9th Cir. 1997) ....................................................................................................9

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*,
   363 F.3d 137 (2d Cir. 2004).....................................................................................................2

*Intelligent Dig. Sys., LLC v. Beazley Ins. Co.*,
   906 F. Supp. 2d 80 (E.D.N.Y. 2012) ........................................................................................9

*Jerry Madison Enters., Inc. v. Grasant Mfg. Co.*,
   No. 89 Civ. 2346, 1990 WL 13290 (S.D.N.Y. Feb. 14, 199) ............................................... 2-3

*Kelleher v. Admiral Indem. Co.*,
　No. 111128/2006, 2010 WL 3293715 (N.Y. Sup. Ct., N.Y. Cnty. July 29,
　2010) (TABLE) ..................................................................................................................9

*Montrose Chem. Corp. v. Superior Court*,
　861 P.2d 1153 (Cal. 1993) ................................................................................................2

*N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*,
　40 Cal. Rptr. 3d 468 (Ct. App. 2006) ................................................................................9

*Nat'l Football League v. Vigilant Ins. Co.*,
　824 N.Y.S.2d 72 (App. Div. 2006) ..................................................................................10

*Nat. Organics, Inc. v. OneBeacon Am. Ins. Co.*,
　959 N.Y.S.2d 204 (App. Div. 2013) ...............................................................................2, 5

*Structural Bridge Prods. Corp. v. Bus. Ins. Agency, Inc.*,
　722 N.Y.S.2d 559 (App. Div. 2001) ..................................................................................7

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*,
　779 N.E.2d 167 (N.Y. 2002) ........................................................................................ 9-10

*Town of Plainfield v. Select Energy Contrs., Inc.*,
　No. CV065000410, 2007 WL 4171603 (Conn. Super. Ct. Nov. 5, 2007) ......................10

*U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*,
　823 F.3d 146 (2d Cir. 2016) ..............................................................................................6

*Vill. of Piermont v. Am. Alt. Ins. Corp.*,
　151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015) .......................................................................7

## PRELIMINARY STATEMENT

Travelers'[1] Memorandum of Law in Opposition to Standard's Motion for Summary Judgment and in Support of its Cross-Motion ("Opp'n") (ECF Doc. No. 25) fails entirely to address or rebut the broad standards under New York and California law directing that an insurer's defense duty arises whenever the face of the underlying complaint alleges any claim that *even may potentially be covered*. While Travelers concedes that the *Charney* Action alleges that Standard's statements constitute "advertising" with respect to Mr. Charney, it argues they are not "advertising" *for Standard*. To reach this conclusion, Travelers first ignores the Policy's broad definition of "advertisement" – instead relying on cases to argue for a generic interpretation of the term. Travelers then ignores the numerous express allegations in the *Charney* complaint (and the publicity statements themselves), which demonstrate that Standard's alleged purpose in issuing these statements was to allay concerns from its investor clients regarding Standard's investment in American Apparel, and encourage further support in Standard's services as an investment firm – meeting the Policy's definition of "advertisement."

Finally, Travelers comes nowhere close to satisfying its burden to show the Policy's Employment-Related Practices ("ERP") Exclusion encompasses the entire *Charney* Action. All applicable case law construing identical such exclusions weighs in support of Standard's construction and the Exclusion's inapplicability to this dispute as a matter of law. Thus, Standard respectfully requests that this Court deny Travelers' Cross-Motion and grant Standard's Motion for Summary Judgment in its entirety, ordering Travelers to make good on its promise to defend Standard.

---

[1] All capitalized terms not defined herein have the meaning set forth in Standard General's ("Standard") Opening Memorandum of Law in Support for Its Motion for Summary Judgment ("SG MOL") (ECF Doc. No. 23-1).

# ARGUMENT

## I. AS A MATTER OF BEDROCK NEW YORK AND CALIFORNIA LAW, TRAVELERS CANNOT AVOID ITS CLEAR DUTY TO DEFEND

Travelers ignores black-letter law of both New York and California, which provides that where an insurance policy sets forth a duty to defend, the carrier **must** defend its insured so long as the claims even **may potentially** be covered. *See* SG MOL at 9.[2] Travelers does not address the obligation to defend the entire *Charney* Action where even only a single claim "arguably arise[s] from covered events." *Nat. Organics, Inc. v. OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204, 207 (App. Div. 2013). Nor does Travelers refute the well-established law directing that any doubt as to whether the allegations *could* give rise to a covered claim must be resolved in favor of Standard, as the insured. *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1161 (Cal. 1993) ("the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*") (emphasis in original).[3]

Ignoring these broad standards, Travelers instead relies on *Jerry Madison Enterprises, Inc. v. Grasant Manufacturing Co.*, No. 89 Civ. 2346, 1990 WL 13290 (S.D.N.Y. Feb. 14, 1990) (cited in Opp'n at 3, 16), in a strained attempt to avoid its clear duty to defend. The underlying complaint in *Jerry Madison*, however, contained **only** allegations of copyright infringement

---

[2] Travelers does not support it claim that "New York law governs" with the requisite choice of law analysis. (Opp'n at 8 n.5.) While New York law *may* appropriately apply here, the law of California (the locale of all actions giving rise to the underlying action) does not differ from New York law on all relevant issues, and thus may also properly be applied. *See* SG MOL at 8.

[3] Travelers' assertion that "Standard General has neither put in any proof on the issue of damages nor addressed the issue in its brief" (Opp'n at 1 n.2) is irrelevant, as Standard's Motion focuses only on the *legal* issue appropriate for summary judgment: whether Travelers' duty to defend per the Policy has been triggered by the allegations in the *Charney* Action as a matter of law. Any dispute as to the amount of damages owed to Standard can be resolved among the parties or through discovery following the disposition of the legal issue now before the Court.

respecting jewelry designs.  Though the insured did market the purportedly infringing jewelry in brochures to its customers – the court noted that "it is irrelevant whether [insured]'s distribution of brochures actually was [covered] 'advertising activity,' because ***the complaint does not allege injury arising out of these brochures***."  *Id.* at *4 (emphasis added); *see also Hosel & Anderson, Inc. v. ZV II, Inc.*, No. 00-CV-6957, 2001 WL 392229, at *2 (S.D.N.Y. Mar. 21, 2001) (cited in Opp'n at 7-8) (complaint contained only allegations of copying a competitor's fabric designs and was silent as to any actual promotion or solicitation causing harm).

In contrast here, as Travelers concedes, Standard's allegedly defamatory press release – *i.e.*, Standard's "advertisement" – is the gravemen of the *Charney* Complaint.  *See* Opp'n at 6 ("the Charney Complaint repeats that the basis for his defamation and related claims" is Standard's publicity statements).  As Travelers does not even address, much less refute, the clear *reasonable potential of coverage* based on the allegations of the four corners of the *Charney* complaint and the Policy, Travelers cannot escape its broad defense duty as a matter of law.

## II. TRAVELERS CANNOT IGNORE ITS POLICY DEFINITION OF "ADVERTISEMENT" TO JUSTIFY DENYING COVERAGE

### A. Standard's Publicity Statement Promoted *Standard's* Investment Services And Solicited Support From Customers And Clients

Even a cursory analysis of the *Charney* complaint and at-issue press broadcasts completely belies Travelers' claim that "there is nothing" in either suggesting the press release "was an 'advertisement' of Standard General's goods, products or services for the purpose of attracting customers or supporters."  (Opp'n at 7, 8-12).  *See* SG MOL at 10-12.

Indeed, the Charney *Action* expressly alleges that Standard's publicity campaign statements were precipitated by a Standard executive informing Charney that his "investors were unhappy by his association with Charney"; that "a major Standard General investor [] had just

pulled $300 million from Standard General as a result of [the executive]'s continued association with Charney"; and that "if Standard General lost *the support of its investors* . . . [the executive] would lose his hedge fund . . . ." Steiner Aff. (ECF Doc. No. 23-2), Ex. 3 ¶ 18 (emphasis added); *see also id.* ¶¶ 44, 55, 73-74.  The *Charney* complaint also alleges that Standard "cause[d] prospective clients and business associates to shun and avoid doing business with [Charney]" on account of the purported defamatory statements. *Id.* ¶ 49.  In other words, Charney alleged Standard's press release impacted potential Standard (and Charney) investors or customers in the marketplace.[4]

Travelers even concedes that the Charney complaint encompasses "advertising referencing Charney." (Opp'n at 14.)  Travelers cannot acknowledge the press release as an advertisement *against* Charney without also accepting it as an advertisement *for* Standard as the issuer – particularly given Standard's alleged goal of soliciting support from its investors as divorced from Mr. Charney.  *See* SG MOL at 10-12.  Travelers is also simply wrong in stating that the press release "does not mention Standard General's 'goods, products or services.'" (Opp'n at 12.)  The reprinted press statements do, in fact, expressly discuss and promote Standard's business objectives and capacities as an investment firm.  *See* SG MOL at 11; Reply Affidavit of Gail Steiner, submitted herewith, Ex. 8 at Ex. D (CBS News article quoting official Standard statements:  "our [i.e., Standard's] objective is to help American Apparel grow and succeed . . ."); *id.* (*Los Angeles Business Journal* article quoting Standard:  "We believe that American Apparel will benefit from the leadership of its new CEO, Paula Schneider, and we are

---

[4] Travelers' attempt to distinguish *Berman v. General Accident Insurance Co. of America*, 671 N.Y.S.2d 619 (Sup. Ct., N.Y. Cnty. 1998) (cited in Opp'n at 11-12), holds no water.  Standard issued the publicity statements here for the purpose of "soliciting the continuation of business" from Standard's investor clients – just as the case was with respect to the statements contained in the at-issue letter in *Berman* regarding the clinic's new hire of "a well-trained and experienced veterinarian."  *Id.* at 621, 624.

focused on supporting her and American Apparel going forward.").

As an investment firm, Standard invests monies entrusted to it by its clients in the marketplace, including by acquiring and growing distressed companies such as American Apparel, to the financial benefit of its investing clients. (*See* Standard's Statement of Undisputed Facts (ECF Doc. No. 23-10) ¶ 1; Steiner Aff. ¶ 2.) Given this fact, Standard's promotional statements in support of the growth and future leadership of American Apparel can only be understood as an advertisement for Standard's investment services as well. The publicity campaign documenting Standard's support for the decisions of the American Apparel Board is a message to Standard's clients that they can rely on Standard to invest wisely and reap returns.

### B. Travelers' Claim That Standard's Reading Of "Advertisement" Is "Unnatural" Relies On Travelers' Own Rejection Of The Policy Definition

Travelers' assertion that Standard's reasonable construction of "advertisement" would "stretch the term" beyond the "normal understanding of a reasonable person" or produce "absurd results" is based solely on Travelers' self-serving conception of "conventional advertising" – not the broad Policy language at issue – and thus should be rejected. (Opp'n at 7-9.)

In fact, Travelers cites no binding, industry-wide construction of "advertising" – let alone one excluding press releases like those at issue here. To the contrary, courts routinely find that actions for false advertising or defamation arising from an insured's press release constitutes covered "advertising injury" under CGL policies similar to the Policy at issue here. *See Nat. Organics*, 959 N.Y.S.2d at 206-207 (health supplement manufacturer entitled to "advertising injury" coverage for action arising from its press release allegedly misrepresenting the identity of its sole distributor in the Nordic region); *see also E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1249, 1253 (N.D. Cal. 2008) (insured entitled to a defense for "advertising injury" alleged in suit arising from purportedly false and deceptive press releases).

5

Moreover, ***not a single case*** cited by Travelers actually involves a policy with the definition of "advertisement" that is at issue here.  Thus Travelers' purported authorities in no way cut against construing the Policy's definition to capture Standard's press release and reprinted publicity statements.  In *EKCO Group, Inc. v. The Travelers Indemnity Company of Illinois*, 273 F.3d 409 (1st Cir. 2001) (cited in Opp'n at 9), the underlying action alleged only trade dress infringement and contained no allegations relating to any advertisement of the purportedly infringing product.  *Id.* at 410, 415.  In rejecting coverage, the *EKCO* court noted the distinction between "producing and selling the goods on the one hand and 'advertising' them on the other."  *Id.* at 414-15.  In contrast, the *Charney* complaint alleges injury exclusively tied to Standard's advertisement – *i.e.*, to Standard's allegedly defamatory broadcasts aimed at assuaging investors and purportedly divorcing Standard's brand from Mr. Charney.  This fits squarely within the Policy's definition of "advertisement," *and* the First Circuit's view of a "conventional" meaning of advertising:  'oral or written publication of material' causing libel or [other enumerated offenses]."  *Id.* at 414.

Similarly, in *A. Meyers & Sons Corp. v. Zurich American Insurance Group.*, 545 N.E.2d 1206 (N.Y. 1989) (cited in Opp'n at 10), the underlying complaint alleged only injury from the insured's manufacture, importation, and sale of allegedly infringing plastic fasteners.  Though the insured claimed it "advertised" in circulating a price list for the fasteners to its customers – the court found the complaint alleged no actual harm based upon that price list.  *Id.* at 1208-09; *see also U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 151-52 (2d Cir. 2016) (cited in Opp'n at 10-11) (no advertising injury alleged where underlying claim asserted harm based only on "sales of counterfeit products" – not advertising activities).  These factually incongruous cases notwithstanding, the *Charney* Action allegations fall squarely within the Policy's broad

6

"advertisement" definition, triggering "advertising injury" coverage for Standard.[5]

### C. Travelers' Focus On The *Charney* Statement Of Decision Or The Relief Sought In Charney's False Advertising Claim Should Be Rejected

Neither Travelers' citation to the *Charney* Action "Statement of Decision" (Opp'n at 12-13), nor its focus on the injunctive relief sought in Charney's false advertising claim (*id.* at 13-15) supports denying Standard's Motion.  To the contrary, the Statement of Decision analyzes only why, in fact, Standard's statements regarding Mr. Charney were not defamatory; this has no import on whether those statements were made in an "advertisement," as defined in the Policy. *See also Vill. of Piermont v. Am. Alt. Ins. Corp.*, 151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015) (duty to defend exists "regardless of how false or groundless" the allegations) (citation omitted).[6]

The fact that Charney's "false advertising" claim sought injunctive relief is also irrelevant because the *Charney* Action indisputably *also* sought damages in excess of $20 million against Standard.  *See* SG MOL at 5.  Charney expressly incorporated all allegations underpinning his claim for damages in his false advertising claim (*see* Steiner Aff., Ex. 3 ¶ 72).  Moreover, the Policy's Insuring Agreement does not require that each cause of action seeks damages – only that Travelers shall "defend the insured in ***any 'suit'***" seeking damages for personal injury or advertising injury.  (*Id.*, Ex. 2 at CGL Part, § I, Coverage B ¶ 1(a) (emphasis added).)

In sum, contrary to Travelers' contention (*see* Opp'n at 17), Standard's publicity

---

[5] Though the underlying complaint in *Structural Bridge Products Corp. v. Business Insurance Agency, Inc.*, 722 N.Y.S.2d 559 (App. Div. 2001) (cited in Opp'n at 10), contained a false advertising claim, the court did not find for the insured because the complaint was void of allegations arising from libel, slander, defamation or any other enumerated offenses required per the express terms of the "advertising injury" provision in the policy at issue.  *Id.* at 562.

[6] Travelers' attempts to distinguish the court's holding in *Bridge Metal Industries, LLC v. Travelers Indemnity Co.*, 812 F. Supp. 2d 527 (S.D.N.Y. 2011), *aff'd*, 559 F. App'x 15 (2d Cir. 2014) (cited in Opp'n at 15-17), should also be rejected.  Here, just like in *Bridge Metal*, there exists no credible dispute that Standard's "advertisement" implicating Charney is what "contribute[d] materially" to the harm alleged.  812 F. Supp. 2d at 541.

statements can only reasonably be understood as advertising *for Standard* as a diligent investment firm promoting the prospective growth of its investment (American Apparel) for the purpose of soliciting client support.  As such, Travelers' defense obligation is triggered as a matter of law respecting the alleged "advertising injury" in the *Charney* Action.

## III. TRAVELERS HAS NOT ESTABLISHED AS A MATTER OF LAW THAT ITS CONSTRUCTION OF THE ERP EXCLUSION IS THE ONLY REASONABLE ONE – OR THAT IT APPLIES TO THE ALLEGATIONS HERE

While conceding that the *Charney* Action asserts "a 'personal injury' offense as defined by the Policies," Travelers erroneously claims that the ERP Exclusion applies as a complete coverage bar.  (Opp'n at 18-23.)  Yet, in doing so, Travelers ignores Standard's position – that the ERP Exclusion does not apply:  i) where no employment relationship between Standard and Charney exists, or ever existed; *and* ii) because the allegations giving rise to coverage simply do not relate in any way to employment practices undertaken by Standard.  *See* SG MOL at 13-14.

Travelers' reliance on the insured's failed argument in *Berman* – that the ERP Exclusion did not apply because the statements at issue were made *after* the claimant's discharge  – does not support applying the Exclusion here.  (Opp'n at 19.)  The court in *Berman* did not base its conclusion on the timing of the claimant's employment, but rather on the fact that the statements at issue related to the claimant's actual performance "as an employee" of the insured.  *Berman*, 671 N.Y.S.2d at 623.  Travelers' reliance on *AmGuard Insurance Co. v. Country Plaza Associates Inc.*, No. 13-CV-5205, 2014 WL 3016544 (E.D.N.Y. July 3, 2014) (cited in Opp'n at 19-20), is similarly inapt, as the underlying complaint in that case was also brought by "a former employee" of the insured alleging claims regarding the insured's failure to pay wages and overtime and for retaliatory termination.  *Id.* at *2.  The *AmGuard* court even noted that the statements at issue involved telephone advice from the insured to the claimant's prospective

8

employer not to hire the claimant, and thus, "could not have occurred but for" the claimant's employment with the insured. *Id.* at *2, *6.

Adopting a similar construction of the ERP Exclusion here renders it unequivocally inapplicable. The *Charney* Action does not allege that Standard committed any wrongful employment-related practices whatsoever while Charney was employed *with Standard* – it could not have, as no such employment relationship existed. *See* SG MOL at 13.

Nor can Travelers squeeze the *Charney* Action allegations entirely and exclusively within the conduct barred via the ERP Exclusion by relying on the Exclusion's provision that it applies "whether [Standard General] may be liable as an employer or *in any other capacity* . . . ." (Opp'n at 21-22.) In contrast to Travelers' construction, courts have repeatedly interpreted ERP Exclusions with this ***identical provision*** as requiring the injured party to have been a current, former or potential employee of the insured. *Kelleher v. Admiral Indem. Co.*, No. 111128/2006, 2010 WL 3293715, at *2, *4 (N.Y. Sup. Ct., N.Y. Cnty. July 29, 2010) (TABLE) (adopting the insured's "reasonable interpretation" that the ERP Exclusion "only applies to claims asserted by current, former, or potential employees"); *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. Rptr. 3d 468, 473, 478-80 (Ct. App. 2006) (holding identical exclusion did not apply to claims brought by individuals who were never employees of the insured).[7]

Put simply, while the ERP Exclusion does not require that Standard be liable in its capacity ***as an employer*** for applicability, it cannot be construed so broadly as to apply to any claim mentioning employment, even where the injured party had no employment relationship with the insured. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d

---

[7] *See also HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 646-47 (9th Cir. 1997); *Intelligent Dig. Sys., LLC v. Beazley Ins. Co.*, 906 F. Supp. 2d 80, 93 (E.D.N.Y. 2012). Quite telling, Travelers does not even make an attempt to distinguish these cases in its Opposition.

167, 170 (N.Y. 2002) (insurer bears burden "to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage"); *Cont'l Cas. Co. v. Rapid-Am Corp.*, 581 N.Y.S.2d 669, 673 (App. Div. 1992) (rejecting construction that would allow "narrow exclusion [to] overwhelm the clear meaning of the coverage provisions"), *aff'd*, 609 N.E.2d 506 (N.Y. 1993).[8]

## CONCLUSION

For the foregoing reasons, Standard respectfully requests that this Court: i) grant its Motion for Summary Judgment against Travelers in full, entering a ruling that Travelers is in breach of its present duty to defend; and ii) deny Travelers' Cross-Motion in its entirety.

Dated:  June 23, 2017

                                                    MCKOOL SMITH, P.C.

                                                    By: */s/ Adam S. Ziffer*
                                                        Robin L. Cohen
                                                        Adam S. Ziffer
                                                        Jillian Raines

                                                        One Bryant Park, 47th Floor
                                                        New York, NY 10036
                                                        Telephone: (212) 402-9804
                                                        rcohen@mckoolsmith.com
                                                        aziffer@mckoolsmith.com
                                                        jraines@mckoolsmith.com

                                                        *Attorneys for Plaintiff*

---

[8] Travelers' cases are entirely inapt.  (Opp'n at 21-22.)  *National Football League v. Vigilant Insurance Co.*, 824 N.Y.S.2d 72 (App. Div. 2006), contained different exclusionary language and, in fact, held for the insured.  *Id.* at 73.  *George S. May International Co. v. Arrowpoint Capital Corp.*, 2011-1865 (La. App. 1 Cir. 8/10/12); 97 So.3d 1167, applied Louisiana law and the underlying claim (by an employee of a company that hired the insured to perform management services), alleged an executive of insured harassed her *while* performing an employment evaluation and then defamed her to her supervisor.  *Id.* at 1169-70, 1176.  *Town of Plainfield v. Select Energy Contractors, Inc.*, No. CV065000410, 2007 WL 4171603 (Conn. Super. Ct. Nov. 5, 2007), also did not apply New York or California law, and involved claims from a subcontractor constructively employed by the insured (through its contractor), concerning the subcontractor's employment relationship itself – namely alleged wrongdoing the insured undertook to precipitate his termination.  *Id.* at *1, *8-9.

10