**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANDARD GENERAL L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE TRAVELERS INDEMNITY COMPANY )<br>OF CONNECTICUT, )<br>)<br>Defendant. )<br>) | Case No. 1:17-cv-00548 (WHP) (GWG)<br><br>**MEMORANDUM OF LAW IN**<br>**SUPPORT OF STANDARD**<br>**GENERAL'S MOTION FOR**<br>**SUMMARY JUDGMENT** |

MCKOOL SMITH, P.C.

Robin L. Cohen
Adam S. Ziffer
Kenneth H. Frenchman
Jillian M. Raines

One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9804
rcohen@mckoolsmith.com
aziffer@mckoolsmith.com
kfrenchman@mckoolsmith.com
jraines@mckoolsmith.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND.....................................................................................................3

    A    The Underlyling Action ................................................................................................2

    B.    Travelers Breached Its Promise To Defend Standard General Against Defamation and False Light Claims Like Those Filed By Charney ..........................................................................................................................5

ARGUMENT..................................................................................................................................7

I.    SUMMARY JUDGMENT STANDARS ............................................................................7

II.    STANDARDS APPLICABLE TO TRAVELERS' DUTY TO DEFEND .........................8

III.    THE CHARNEY ACTION ALLEGATIONS INDISPUTABLY FALL WITHIN THE POLICY'S ADVERTISING INJURY COVERAGE ................................................10

IV.    TRAVELERS ADMITS THAT THE CHARNEY ACTION ALLEGATIONS TRIGGER THE PERSONAL INJURY COVERAGE, AND THE EMPLOYMENT EXCLUSION DOES NOT INDISPUTABLY AND ENTIRELY APPLY TO BAR COVERAGE .....................................................................12

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auto. Ins. Co. of Hartford v. Cook*,
 7 N.Y.3d 131 (2006) ..................................................................................................................9

*Bickerstaff v. Vassar Coll.*,
 196 F.3d 435 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000) ..............................................8

*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*,
 812 F. Supp. 2d 527 (S.D.N.Y. 2011), *aff'd* ............................................................................11

*Bridge Metal Indus., LLC v. Travelers Indem. Co.*,
 559 F. App'x 15 (2d Cir. 2014) .................................................................................................11

*Burns Glass Servs., Ltd. v. Travelers Indem. Co. of Ill.*,
 No. 2001/03433, 2002 WL 31817916 (N.Y. Sup. Ct. July 31, 2002) .....................................14

*Hameid v. Nat'l Fire Ins. of Hartford*,
 71 P.3d 761 (Cal. 2003) ............................................................................................................12

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
 353 P.3d 319 (Cal. 2015) ..........................................................................................................10

*Horace Mann Ins. Co. v. Barbara B.*,
 846 P.2d 792 (1993), *as modified on denial of reh'g* (May 13, 1993) ...............................9, 10

*HS Servs., Inc. v. Nationwide Mut. Ins. Co.*,
 109 F.3d 642 (9th Cir. 1997) ....................................................................................................13

*Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*,
 363 F.3d 137 (2d Cir. 2004) .....................................................................................................10

*Intelligent Digital Sys., LLC v. Beazley Ins. Co.*,
 906 F. Supp. 2d 80 (E.D.N.Y. 2012) ........................................................................................14

*Konikoff v. Prudential Ins. Co. of Am.*,
 234 F.3d 92 (2d Cir. 2000) .........................................................................................................8

*MacKinnon v. Truck Ins. Exch.*,
 73 P.3d 1205 (Cal. 2003), *as modified on denial of reh'g* (Sept. 17, 2003) ...........................13

*Marquez Knolls Prop. Owners Ass'n, Inc. v. Exec. Risk Indem., Inc.*,
 62 Cal. Rptr. 3d 510 (Ct. App. 2007) .......................................................................................13

*Mazzuoccolo v. Cinelli*,
    666 N.Y.S.2d 621 (1st Dep't 1997) ...................................................................................9

*Montrose Chem. Corp. v. Superior Court*,
    861 P.2d 1153 (Cal. 1993) ............................................................................................10

*N. American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*,
    137 Cal. App. 4th 627 (Ct. App. 2006) ........................................................................14

*Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*,
    102 A.D.3d 756 (2d Dep't 2013) .............................................................................10, 13

*Palp, Inc. v. Williamsburg Nat. Ins. Co.*,
    132 Cal. Rptr. 3d 592 (Ct. App. 2011) ...........................................................................9

*Parkinson v. Cozzolino*,
    238 F.3d 145 (2d Cir. 2001) ...........................................................................................8

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998) ...........................................................................................8

*St. Pierre v. Dyer*,
    208 F.3d 394 (2d Cir. 2000) ...........................................................................................8

*Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*,
    No. Civ.A.3:02-CV-1881-P., 2004 WL 389090 (N.D. Tex. Feb. 25, 2004) ...........14

*Village of Piermont v. Am. Alternative Ins. Corp.*,
    151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015) ..................................................................10

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000) .............................................................................................8

*Westview Assocs. v. Guar. Nat. Ins. Co.*,
    95 N.Y.2d 334 (N.Y. 2000) ..........................................................................................13

**Rules**

Fed. R. Civ. P. 56(c) ..............................................................................................................7

## PRELIMINARY STATEMENT

This is an insurance coverage action concerning coverage for an underlying lawsuit in which the policyholder, Standard General L.P. ("Standard General"), was sued for, *inter alia,* defamation, false light, and false advertising by Dov Charney, former CEO and Chairman of the Board of Directors of apparel company American Apparel, Inc. (the "*Charney* Action"). The policy Standard General purchased from Defendant Travelers Indemnity Company of Connecticut ("Travelers") included coverage for claims alleging personal or advertising injuries arising from certain offenses, specifically including the offenses alleged by Charney – defamation and false light. Although the *Charney* Action specifically plead offenses that Travelers promised to cover when it took Standard General's premiums, Travelers steadfastly refused to defend Standard General or pay its defense costs, prompting Standard General to file this action. By this motion, Standard General requests its defense costs and a ruling that Travelers is in breach of its present duty to defend.

Forced to admit that the defamation and false light claims fall within both the policy's "advertising injury" and "personal injury" coverages, Travelers ignores the broad standards applicable to its duty to defend and contorts two aspects of the policy to justify its breach. First, Travelers insists that the underlying action did not allege that the statements at issue involved any "advertisement" of Standard General's business. However, a comparison of the policy's definition of advertisement with the allegations of the *Charney* Action and the nature of Standard General's business proves Travelers' claim untrue. As an investment firm, Standard General's goods and services consist of its ability to choose wise investments and support the profitability of its investments. Charney alleged that Standard General's allegedly defamatory statements were made to allay concerns of Standard General's investors regarding its investment in

1

American Apparel, and to encourage further investment in Standard General's funds. This squarely satisfies the policy's broad definition of "advertisement" – the allegedly defamatory statements constituted a broadcast to the public about Standard General's services for the purpose of attracting customers or supporters. Even more egregious is Travelers' complete disregard of the inclusion in the *Charney* Action of a claim for false advertising, and its prayer for an injunction from "acts of false advertising." Travelers cannot genuinely dispute that the statements at issue in the *Charney* Action were allegedly made in Standard General's "advertisement" (as defined in the policy) triggering the policy's "advertising injury" coverage.

Unable to point to the "advertisement" requirement with respect to the policy's "personal injury" coverage (it does not apply to this coverage grant), Travelers insists that the policy's Employment Practices Exclusion applies. Again, completely ignoring bedrock New York law that requires that the exclusion must encompass the entire claim for it to apply, and that no reasonable reading of the complaint could lend any possibility of coverage, Travelers focuses only on the fact that some of the statements concerned Mr. Charney's termination of employment by American Apparel. Travelers conveniently ignores that the *Charney* Action expressly "centers on press comments" (not on any termination action). Travelers also ignores that many of the allegedly defamatory statements concern Mr. Charney's relationship with the company as a shareholder (having nothing whatsoever to do with employment). Finally, Mr. Charney was never in any employment relationship with Standard General, and Standard General could not be sued for any Employment Practice. The *Charney* Action is not an action for wrongful termination or employment-related practices action that would otherwise implicate the exclusion. Instead, the *Charney* Action concerns Standard General's investment in American Apparel, and the allegedly defamatory statements concern in large part whether Mr. Charney

2

would have control over the company moving forward – in his ownership capacity. Because these facts preclude Travelers from demonstrating that the entirety of the *Charney* Action falls within the Employment Practices Exclusion (which it must do to rely on the exclusion), the policy's personal injury coverage is also requires Travelers to defend the entire action.

Travelers should be held to the promises it made to defend Standard General by reimbursing the costs of its defense – a defense that Travelers promised, but refuses, to provide.

## FACTUAL BACKGROUND

### A. The Underlying Action

The *Charney* Action was initiated on May 7, 2015 by Dov Charney, after he was ousted as CEO and Chairman of the Board of Directors of American Apparel in June 2014. (*See* Steiner Aff.[1] Ex. 3 ¶¶ 10-15.) The *Charney* complaint alleged that, following Charney's termination, Standard General effectively took control of American Apparel's Board and defamed Charney, placed him in a false light, intentionally interfered with his actual and prospective economic relations, and committed unfair business acts and false advertising, in violation of California law. (*See generally* Steiner Aff. Ex. 3).

In his complaint, Mr. Charney claimed that after Charney's June 2014 termination as CEO and Chairman, because Charney still retained a majority shareholder position in American Apparel, Standard General launched "an anti-Charney campaign" aimed at "destroying Charney's personal and professional reputation." (Steiner Aff. Ex. 3 ¶¶ 1, 42-43.) Charney claimed that on or around December 22, 2014, Liz Cohen, a Standard General spokesperson, made comments to press outlets regarding Charney, broadcasting that Standard General "supported the independent, third-party and very thorough investigation into the allegations

---

[1] The "Steiner Aff." Refers to the Affidavit of Gail Steiner, sworn to May 15, 2017, and submitted in support of this motion.

against Mr. Charney, and respects the board of director's decision to terminate him based on the results of that investigation." (*Id.* ¶ 44.) The *Charney* complaint asserts that these statements were republished by various news outlets as part of a Standard General publicity campaign, and in order to spread "defamatory falsehoods" about Mr. Charney, including those which cast him as someone who commits "financial malfeasance and illegal sexual harassment and discrimination." (*Id.* ¶¶ 55-57, 62-64, 67-68.)

The complaint also alleged why Standard General, an investment firm that specializes in event-driven management funds and distressed company investments, undertook those actions: its "relatively conservative investors were unhappy by [Standard General]'s "association with Charney," and purportedly because a "major" investor had withdrawn "$300 million from Standard General as a result of [a Standard General executive's] ongoing association with Charney." (*Id.* ¶ 18.) These allegations, however groundless, suggest that Standard General cut ties with Charney to ensure it would not lose "the support of its investors." (*Id.*)

Charney asserted that Standard General's purported defamatory publications impeded Charney's prospective and actual business prospects, including his ability to engage in passive investments within the apparel industry, to start another competing clothing company, and to obtain financing for the same. (*See id.* ¶¶ 62, 67-68.) Charney also expressly alleged that this purportedly defamatory conduct constituted "unfair business acts" and "false advertising" under California law, claiming Standard General "will continue to republish [its] false, defamatory, and demeaning statements regarding [Charney] to the general public, which is likely to be deceived by the same and which is likely to both avoid business with [Charney]." (*Id.* ¶¶ 73-74.) The *Charney* complaint, notably, makes no claim relating in any way to any past, present or

4

prospective employment between Charney and Standard General. The *Charney* Action sought as relief, among other things, damages in excess of $20 million against Standard General.

The California Superior Court heard and granted Standard General's motion to strike the *Charney* Complaint on September 30, 2015. (*See* Steiner Aff. Ex. 7.) The California Superior Court granted Standard General's anti-SLAPP motion and dismissed the *Charney* Action complaint with prejudice. (*See* Steiner Aff. Ex. 4.) Charney appealed that judgment in Standard General's favor before the Court of Appeal of the State of California, Second Appellate District. On March 28, 2017, this California appeals court affirmed the judgment for Standard General. (*See* Steiner Aff. Ex. 5.) In doing so, the Appeals Court described the *Charney* Action as "a lawsuit alleging several causes of action rooted in [Charney's] claim that the press release contained false and defamatory information about him." (*Id.* at 3.) In affirming the dismissal of all counts, the Court noted that Charney alleged Standard General made the "false and defamatory statements" to hinder Charney's business efforts, in particular to "disrupt his ongoing negotiations to obtain third party assistance to regain control of American Apparel." (*Id.* at 4-5.)

**B.     Travelers Breached Its Promise To Defend Standard General Against Defamation and False Light Claims Like Those Filed By Charney**

Travelers issued primary commercial general liability policy no. I-660-2D920156-TCT-14 (the "Policy"), providing coverage to Standard General as the "named insured" during the policy period of September 1, 2014 to September 1, 2015. (*See* Steiner Aff. Ex. 2.) The Policy provides $1 million in limits for all losses arising from both "personal injury" and "advertising injury," and expressly provides that Travelers "will have the ***right and duty to defend" Standard General against any "suit" seeking damages***. (*Id.* at CGL Part, § I, Coverage B ¶ 1(a).) "Suit" is defined in the Policy as "a civil proceeding in which damages because of . . . ['personal injury'

5

or 'advertising injury'] to which this insurance applies [are] alleged." (*Id.* at CGL Part, § V(18); *id.* at CGL Part, Amendment of Coverage B Endorsement ("Cov. B End."), § A.)

Under the Policy, "advertising injury" is defined, in relevant part, as injury caused by "[o]ral or written publication, including publication by electronic means, of material in your 'advertisement' that slanders or libels a person . . . or disparages a person's . . . goods, products or services . . ." or that "unreasonably places a person in a false light." (*Id.* at CGL Part, Cov. B End., § F.) "Advertisement" is defined very broadly as any notice "broadcast or published to the general public . . . about [Standard General's] goods, products or services for the purpose of attracting customers or supporters." (*Id.* at CGL Part, § V(1).) "Personal injury" under the Policy expressly includes injury caused by "oral or written publication, including publication by electronic means," of any "material that slanders or libels a person . . . or disparages a person's . . . goods, products or services . . . ," or that "unreasonably places a person in a false light." (*Id.* at CGL Part, Cov. B End., § F.)

As the allegations discussed above fall squarely within this coverage provided to Standard General, Standard General timely notified Travelers of the *Charney* Action and requested that Travelers provide a defense and pay Standard General's defense expenses. On or around June 10, 2016, however, Travelers denied Standard General's request by letter, asserting that the *Charney* Action was not covered because the conduct alleged did not fall under the Policy's definition of "advertising injury." Travelers also stated that, despite its broad defense obligation, the Policy's ERP Exclusion barred coverage.[2]

---

[2] The ERP Exclusion provides that coverage does not apply to "Personal injury" to a person "arising out of any: (a) Refusal to employ that person; (b) Termination of that person's employment; or (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." *Id.* at CGL Part, ERP Exclusion Endorsement, § B. The

Standard General's defense costs thereafter mounted, and having been refused a defense or reimbursement for any of its hundreds of thousands of dollars in expenses, Standard General initiated this action for damages for breach of contract and a declaration as to Travelers' defense obligation and duty to pay Standard General's defense costs. Soon after filing the complaint, Standard General respectfully requested that the Court grant it permission to file for summary judgment given the dispute presents entirely a question of law relating to policy construction. The Court agreed and set a briefing schedule and referred the parties to mediate, which proved unsuccessful.

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is material for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001). "Although the moving party bears the initial burden of establishing that there are no genuine

---

Exclusion further provides that it applies "[w]hether the insured may be liable as an employer or in any other capacity." *Id.*

issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson*, 477 U.S. at 256). Travelers may not "rest upon…mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir.1999); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (quotation marks, citations, and alterations omitted).

The *Charney* Action allegations give rise to a covered "advertising injury" and "personal injury," each triggering Travelers' obligations. Interpreting the meaning of a contract's terms is a question of law for the court commonly resolved on summary judgment. *See Mazzuoccolo v. Cinelli*, 666 N.Y.S.2d 621, 622-23 (1st Dep't 1997); *Palp, Inc. v. Williamsburg Nat. Ins. Co.*, 132 Cal. Rptr. 3d 592, 598 (Ct. App. 2011). As the facts are not in dispute, and this case falls squarely within Travelers' duty to defend, this case warrants summary judgment for Standard.

## II. STANDARDS APPLICABLE TO TRAVELERS' DUTY TO DEFEND

No choice of law analysis is necessary here because there is no conflict between the law of New York and California on all issues relevant to this dispute (the underlying facts occurred in California and Travelers issued the Policy in New York where Standard General maintains its principal place of business). Under the law of either jurisdiction, Travelers' defense obligation is clearly triggered by the allegations of the *Charney* complaint and the plain Policy language.

Moreover, because Standard met success at the trial and appellate level, this case concerns **only** Travelers' duty to provide a defense to Standard General and pay its costs to

8

defend against the *Charney* Action. Travelers' defense obligation can be determined, and is clearly evinced, simply by analyzing the terms of the Policy and the allegations in the *Charney* complaint. *See Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006); *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993), *as modified on denial of reh'g* (May 13, 1993) (duty to defend is determined "in the first instance by comparing the allegations of the complaint with the terms of the policy").

Where an insurer has promised to defend its insured, an insured's entitlement to defense costs is not conditioned on whether covered liability is expressly articulated or ultimately realized; rather, the insurer's defense duty arises whenever the face of the underlying complaint alleges claims that even may potentially be covered. *See Village of Piermont v. Am. Alternative Ins. Corp.*, 151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 325 (Cal. 2015) ("the insurer's contractual duty to defend the insured extends to all claims that are even potentially subject to the policy's indemnity coverage"); *Horace Mann*, 846 P.2d at 799 ("an insured buys liability insurance in large part to secure a defense against all claims potentially within policy coverage, even frivolous claims unjustly brought"). This broad defense obligation requires that, even where only a single claim "arguably arise[s] from covered events," the insurer must defend the entire action against its insured. *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 102 A.D.3d 756, 758 (2d Dep't 2013). If doubt exists as to whether the allegations reasonably could give rise to a covered claim, that doubt must be resolved in favor of the insured. *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1161 (Cal. 1993) ("the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot").

9

Standard General's costs of defending against the *Charney* Action fall precisely within the coverage granted under the Policy, which was purchased expressly to protect against suits alleging damages resulting from advertising injury, and personal injury. Because the *Charney* Action alleges injury clearly covered under the broad definitions of advertising injury and/or personal injury, Travelers is obligated to pay the entirety of Standard General's defense costs.

### III. THE *CHARNEY* ACTION ALLEGATIONS INDISPUTABLY FALL WITHIN THE POLICY'S ADVERTISING INJURY COVERAGE

The *Charney* Action includes causes of action for defamation and false light, which are specifically included within the Policy's definition of advertising injury. To avoid coverage, Travelers argues that the underlying complaint fails to satisfy the Policy's requirement that publication of material giving rise to these advertising injuries must have been in Standard General's "advertisement." While the Policy does contain such a requirement, it defines "advertisement" broadly as any notice "broadcast or published to the general public . . . about [Standard General's] goods, products or services for the purpose of attracting customers or supporters." (*See* Steiner Aff. Ex. 2 at CGL Part, § V(1).) The allegations of the *Charney* Action – **which include a false advertising claim** – plainly meet that broad definition.

Here, the *Charney* complaint alleges that after his ouster from American Apparel, Mr. Charney was the subject of "defamatory falsehoods" made by Standard General to the general public, which were reprinted by various news outlets. Any reasonable reading of the complaint makes clear that these broadcasts were alleged to be part of a "publicity campaign" aimed at promoting Standard General's investment in American Apparel as divorced from Charney, and securing Standard General's investors and supporters while disrupting Charney's business prospects in turn. In fact, the *Charney* complaint expressly claims – albeit without merit – that Standard General, in its capacity as an investor in American Apparel and operating generally as a

10

hedge fund, did not finance Mr. Charney's efforts to regain control of American Apparel after he had been terminated in June 2014, precisely because Standard General's investors were unhappy with the "association with Charney." (Steiner Aff. Ex. 3 ¶ 18.) The complaint even asserts that a Standard General executive told Charney that "if Standard General lost the support of its investors," then he "would lose his hedge fund . . ." (*Id.*) Charney's complaint goes on to set forth the alleged marketing efforts undertaken by Standard General in its subsequent publicity campaign to purportedly tarnish Mr. Charney's personal and professional reputation and protect Standard General's business reputation. (*See, e.g.*, *id.* ¶¶ 43-44.)

Indeed, the re-publications containing these allegedly defamatory falsehoods attached to the *Charney* complaint clearly note that "[a] Standard General spokesman said that the fund's objective has been to help American Apparel grow and succeed." (*See* Steiner Aff. Ex. 3.) The publications also note Standard General broadcasted that it "believe[s] that American Apparel will benefit from the leadership of its new CEO, Paula Schneider, and we are focused on supporting her and American Apparel going forward." (*Id.*) The reasonable and plain inference drawn from these statements and publications is that they were made in the general promotion of Standard General's services as an investment firm to attract and retain its professional good will and its clients in connection with the investment in American Apparel, satisfying the Policy's definition of "advertisement."

Travelers cannot escape its obligation to defend and pay Standard General's defense costs by claiming that the complaint does not expressly assert that Standard General was in the process of advertising its investment services, especially as the complaint's fifth cause of action is for "false advertising" in violation of California's Business And Professions Code. *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.,* 812 F. Supp. 2d 527 (S.D.N.Y. 2011), *aff'd sub nom.* 559

F. App'x 15 (2d Cir. 2014) (finding insurer was obligated to defend plaintiffs against false advertisement claims because "the insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy."); (*See also* Steiner Aff. Ex. 3 at ¶¶ 73-74; *see also id.* ¶¶ 16-18, 43-44, 47-58, 62, 67-68.) Thus, Travelers' assertions to date that the allegedly defamatory statements were not made in connection with an "advertisement" as defined under the Policy is insupportable on these facts as a matter of law. *See also Hameid v. Nat'l Fire Ins. of Hartford*, 71 P.3d 761, 765 (Cal. 2003) (analyzing meaning of undefined provision "advertising activities" in CGL policy, noting "[m]ost of the published decisions hold that 'advertising' means widespread promotional activities directed to the public at large").

## IV. TRAVELERS ADMITS THAT THE *CHARNEY* ACTION ALLEGATIONS TRIGGER THE PERSONAL INJURY COVERAGE, AND THE EMPLOYMENT EXCLUSION DOES NOT INDISPUTABLY AND ENTIRELY APPLY TO BAR COVERAGE

Travelers is forced to admit that the *Charney* Action alleges potential "personal injury," triggering Travelers' duty to defend under the Policy. Then, ignoring the strict standards applicable to exclusions, Travelers insists that the Policy's ERP Exclusion applies.[3] It is wrong.

Insurance policy exclusions are to be construed narrowly and given the reasonable interpretation most beneficial to the insured. *See Natural Organics*, 102 A.D.3d at 758 ("'When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted ***only to exclude coverage***'") (emphasis added) (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002)); *Marquez Knolls Prop. Owners Ass'n, Inc. v. Exec. Risk Indem., Inc.*, 62 Cal. Rptr. 3d 510, 514-15 (Ct. App. 2007) ("While coverage clauses are

---

[3] The ERP Exclusion does not apply to "advertising injury" coverage. *See* Steiner Aff. Ex. 2 at CGL Part, ERP Exclusion Endorsement.

12

interpreted broadly, exclusionary clauses are construed narrowly against the insurer"). Moreover, to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Westview Assocs. v. Guar. Nat. Ins. Co.*, 95 N.Y.2d 334, 340 (2000); *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1218 (2003), *as modified on denial of reh'g* (Sept. 17, 2003).

Primarily, the ERP Exclusion does not apply pursuant to its terms. Charney's claim against Standard General arises out of the statements made about him to the public and their impact on him and his business prospects – the underlying complaint begins: "This lawsuit centers on press comments issued by Defendant Standard General entities relating to Plaintiff Dov Charney." ( Steiner Aff. Ex. 3 ¶ 1.) This is not a claim for "refusal to employ" Charney; not for wrongful "termination" of Charney; nor for any wrongful "[e]mployment related practices." (Steiner Aff. Ex. 2 at CGL Part, ERP Exclusion Endorsement.) This is reinforced by the allegations of the *Charney* complaint which make clear that no employment relationship exists, or ever existed, between Standard General and Charney, and the allegations giving rise to coverage do not relate in any way to employment practices undertaken by Standard General. More significantly, viewed through the standards applicable to a duty to defend, and an exclusionary clause, Travelers will not be successful in demonstrating that the entirety of the *Charney* Action entirely falls within the narrowly construed ERP Exclusion, with no possibility of coverage for any of the claims against Standard General.

Additionally, courts have interpreted similar ERP exclusions, holding that their application requires more than an allegation of defamatory content directed at or about the claimant's employment. *See HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 646 (9th

13

Cir. 1997) (holding an ERP exclusion did not apply to insured's former employee's claim of defamation, noting content of statements were made "to protect [insured] in the marketplace"); *N. American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 479-480 (Cal. App. 2006) (holding "commonsense and, thus, reasonable understanding" of claims to which an ERP exclusion applied were those relating to "actual, former, or prospective employment"); *see also Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, 906 F. Supp. 2d 80, 93 (E.D.N.Y. 2012) (holding claimant's "consulting agreement claim is not employment-related" for purposes of applying an "employment-related" exception to insured-versus-insured exclusion). Similar to the plaintiffs in *North American Building Maintenance*, Standard General did not employ Charney. And just like the Court found in *HS Services Inc.*, an ERP exclusion should not apply to Standard General's statements that it made to protect and promote itself in the marketplace. As these cases illustrate, the ERP exclusion does not apply.

Travelers is familiar with the case law construing similar ERP exclusions narrowly, having failed in prior attempts to deny its insureds a defense. *See Burns Glass Servs., Ltd. v. Travelers Indem. Co. of Ill.*, No. 2001/03433, 2002 WL 31817916, at *4-*5 (N.Y. Sup. Ct. July 31, 2002); *see also Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, No. Civ.A.3:02-CV-1881-P., 2004 WL 389090, at *5-*6 (N.D. Tex. Feb. 25, 2004). In sum, as a matter of law, Travelers has not and cannot meet its burden of showing that absolutely ***no*** conceivable possibility of coverage exists based on the allegations of the *Charney* complaint and the plain Policy terms.

## CONCLUSION

For the reasons set forth above, Standard General respectfully requests that this Court grant Standard General's Motion for Summary Judgment against Travelers and enter a ruling that Travelers is in breach of its present duty to defend.

Dated: May 15, 2017

                                        MCKOOL SMITH, P.C.

                                      By:  /s/ Adam S. Ziffer
                                          Robin L. Cohen
                                          Adam S. Ziffer
                                          Kenneth H. Frenchman
                                          Jillian Raines

                                          One Bryant Park, 47th Floor
                                          New York, NY 10036
                                          Telephone: (212) 402-9804
                                          rcohen@mckoolsmith.com
                                          aziffer@mckoolsmith.com
                                          kfrenchman@mckoolsmith.com
                                          jraines@mckoolsmith.com

                                        *Attorneys for Plaintiff*