UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------:
STANDARD GENERAL L.P., :
 :
                           Plaintiff, :
 : 17cv0548
         -against- :
 : OPINION & ORDER
THE TRAVELERS INDEMNITY :
COMPANY OF CONNECTICUT, :
 :
                           Defendant. :
------------------------------------------------------------:

WILLIAM H. PAULEY III, District Judge:

    Standard General L.P. ("Standard General") brings this breach of contract and declaratory judgment action against The Travelers Indemnity Company of Connecticut ("Travelers"). Standard General seeks damages for Travelers' alleged breach of its obligations under a primary commercial insurance policy and an excess commercial liability insurance policy. Standard General also seeks a declaratory judgment that Travelers is obligated to defend Standard General in a lawsuit brought by Dov Charney, the erstwhile CEO and Chairman of the Board of Directors of American Apparel, Inc. (the "Charney Action"). Both parties move for summary judgment. For the following reasons, Standard General's motion for summary judgment is granted, and Travelers' motion for summary judgment is denied.

BACKGROUND

    This dispute arises out of two insurance policies issued by Travelers in July 2014 to Standard General as the named insured. Standard General is a New York-based investment firm "specializing in event-driven management funds and distressed company investments." (Travelers' Response to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, ECF No. 27 ("Travelers' Rule 56.1 Response") ¶ 1.) The first policy is a commercial

-1-

insurance policy that provides coverage for commercial general liability and includes a limit of $1 million for losses from personal and advertising injury (the "Primary Policy"). The other is an excess commercial liability insurance policy that provides up to $5 million in coverage for losses from personal and advertising injury that exceed the applicable coverage limits of the underlying insurance, which expressly includes the Primary Policy (the "Excess Policy," and together with the Primary Policy, the "Policies").

I. Operation of the Policies

The Primary Policy provides liability coverage to Standard General during the policy period of September 1, 2014 to September 1, 2015. (Travelers' Rule 56.1 Response ¶ 11.) Specifically, it provides that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." (See Affidavit of Gail Steiner, ECF No. 33 ("Steiner Aff."), Ex. 2, at 92.) Under the Primary Policy, Travelers also has "the right and duty to defend the insured against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false or fraudulent." (Steiner Aff., Ex. 2, at 92.) This duty to defend does not apply to any "'suit' seeking damages for 'personal injury' or 'advertising injury' to which this insurance does not apply." (Steiner Aff., Ex. 2, at 92.)

Like the Primary Policy, the Excess Policy insures Standard General during the same policy period. (Declaration of Thomas A. Martin, ECF No. 26 ("Martin Decl."), Ex. C, at 4.) Travelers also has "the right and duty to defend any 'suit' for damages" payable under the Excess Policy's personal injury and advertising injury liability coverage that exceed the limits of the underlying insurance, "even if any of the allegations of the 'suit' are groundless, false or fraudulent." (Martin Decl., Ex. C, at 38.) Under both Policies, a "suit" is defined as "a civil

proceeding in which damages because of . . . ['personal injury' or 'advertising injury'] to which this insurance applies [is] alleged." (Travelers' Rule 56.1 Response ¶ 13; Martin Decl., Ex. C, at 18.)

II.  The Charney Action

On May 7, 2015, Charney brought an action against Standard General and several of its affiliates in the Superior Court of the State of California. In that lawsuit, Charney asserts claims for, inter alia, defamation, false light, and "unfair business acts" and "false advertising" in violation of California's Business & Professions Code. (See Martin Decl., Ex. E.) The gravamen of the complaint is that Standard General made certain comments in a December 2014 statement (the "December 2014 Statement") to the press falsely claiming that American Apparel's Board of Directors terminated Charney's employment as CEO and Chairman of the Board for cause based on an independent, third-party investigation into his alleged misconduct. (Martin Decl., Ex. E, ¶¶ 1, 43–44.) The complaint further alleges that Standard General had "effectively [taken] over American Apparel by and through its control of company stock and the Board of Directors," and that it essentially used the investigation as a means both to "reinforc[e] Charney's exit from the company and entrench[] Standard General's control over the same." (Martin Decl., Ex. E, ¶¶ 19, 22.)

The December 2014 Statement, by a Standard General spokesperson, purported to respond to Charney's interview with Bloomberg Television. In relevant part, it states:

> Our objective is to help American Apparel grow and succeed. We supported the independent, third-party and very thorough investigation into the allegations against Mr. Charney, and respect the Board of Director[s'] decision to terminate him based on the results of that investigation. We believe that American Apparel will benefit from the leadership of its new CEO, Paula Schneider, and we are focused on supporting her and American Apparel going forward.

(Martin Decl., Ex. E, at Ex. D.) These comments, allegedly part of an "anti-Charney publicity campaign designed to destroy Charney's personal and professional reputation," were subsequently referenced and republished by worldwide news outlets. (Martin Decl., Ex. E, ¶¶ 43–44.)

On October 30, 2015, the California Superior Court issued a Statement of Decision granting Standard General's anti-SLAPP motion to strike the complaint and dismissing the Charney Action with prejudice. (See Martin Decl., Ex. D.) In finding that Charney failed to establish that Standard General's statement was defamatory, the Superior Court reasoned that "[t]he natural and popular construction that the average reader would give to the statement in its full context is that it was a commentary on American Apparel's decision to terminate [Charney], not a statement about [Charney's] own conduct or character." (Martin Decl., Ex. D, at 2.) The California Court of Appeal affirmed on March 28, 2017. (See Steiner Aff., Ex. 5.) Charney sought further review by the Supreme Court of California. That appeal is currently pending.

LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party has the burden of demonstrating the absence of any genuine disputes of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences against the movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On dueling motions for summary judgment,

the court must evaluate each party's motion on its merits and determine whether either is entitled to judgment as a matter of law. Coutard v. Mun. Credit Union, 848 F.3d 102, 114 (2d Cir. 2017). Where the interpretation of a clear and unambiguous insurance policy is the "sole question" presented on a motion for summary judgment, "the issue is one of law that may be decided by the Court upon a motion for summary judgment." Vill. of Piermont v. Am. Alt. Ins. Corp., 151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015).

## DISCUSSION

As a threshold matter, the Policies do not contain a choice of law provision. Travelers contends that New York law governs this dispute. Standard General agrees that New York law could apply, but suggests that California law could also apply. This Court has subject-matter jurisdiction based on the diversity of citizenship between the parties. A federal district court sitting in diversity must apply the choice of law rules of the state in which the court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). In determining what law applies to a contract dispute, New York uses the "center of gravity" or "grouping of contacts" approach to determine which forum has the most significant contacts with the matter in dispute. Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003). For insurance contracts, the applicable law is typically that of the principal location of the insured risk. Liberty Mut. Ins. Co. v. Fairbanks Co., 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016). If the policy covers risks in multiple states, however, then the state of the insured's domicile (i.e., the insured's principal place of business) is "a proxy for the principal location of the insured risk" and is the "controlling factor" in determining the applicable law. Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 35–37 (N.Y. App. Div. 2006), aff'd 876 N.E.2d 500 (N.Y. 2007). Here,

Standard General maintains its principal place of business in New York and operates as a New York based investment firm. (Travelers' Rule 56.1 Response ¶ 1.) In addition, the Policies were both procured by Crystal & Company, a New York broker for Travelers. Accordingly, New York law applies.

The parties' summary judgment motions raise one question: Does Travelers have a duty to defend Standard General in the Charney Action? Standard General advances two arguments as to why it is entitled to summary judgment: (1) the Charney Action alleges an "advertising injury" covered under the Policies; (2) even if the Charney Action does not allege an "advertising injury," it avers a "personal injury" to Charney, and the Employment-Related Practices ("ERP") exclusion in the Policies does not apply. Travelers contends that (1) the December 2014 Statement does not constitute an "advertisement" that would support a claim for "advertising injury"; and (2) even if the Charney Action alleges a "personal injury" under the Policies, those allegations fall within the Policies' ERP exclusion. Interpretation of the policy language is central to the parties' summary judgment motions. Accordingly, this Court turns first to the applicable legal principles.

I. New York Insurance Policy Interpretation Principles

Under well-settled law, New York courts resolving disputes over insurance coverage "first look to the language of the policy." Selective Ins. Co. of Am. v. Cty. of Rensselaer, 47 N.E.3d 458, 461 (N.Y. 2016). The threshold question is whether the insurance policy is ambiguous, which is a matter of law for the court to decide. Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465–66 (2d Cir. 2010). A "contract is unambiguous if the language it uses has 'a definite meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable

basis for a difference of opinion.'" Selective Ins. Co. of Am., 47 N.E.3d at 461 (quotation marks omitted). Courts must give clear and unambiguous provisions "their plain and ordinary meaning." Selective Ins. Co. of Am., 47 N.E.3d at 461. If the meaning of policy language is "otherwise plain," it "does not become ambiguous merely because the parties urge different interpretations in the litigation." Law Debenture Trust Co. of N.Y., 595 F.3d at 467. But if there is a reasonable basis for a difference of opinion on the meaning of policy language, then the language is ambiguous and must be construed in favor of the insured. Selective Ins. Co. of Am., 47 N.E.3d at 461; see also Liberty Mutual Ins. Co., 170 F. Supp. 3d at 642 (explaining that an interpretation is "not reasonable if it strains the policy language 'beyond its reasonable and ordinary meaning'").

II. Whether the Charney Action Alleges an "Advertising Injury"

Standard General asserts that Travelers has a duty to defend because the allegations in the Charney Action give rise to a covered "advertising injury." New York courts have recognized the duty to defend as "exceedingly broad," and an insurer "must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage." Cont'l Cas. Co. v. Rapid-American Corp., 609 N.E.2d 506, 509 (N.Y. 1993). In other words, the "duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." Seaboard Sur. Co. v. Gillette Co., 476 N.E.2d 272, 275 (N.Y. 1984). The insurer must defend the entire action "even if only one claim is potentially covered by the insurance policy." Vill. of Piermont, 151 F. Supp. 3d at 447. However, if as a factual or legal matter the allegations do not "assert a claim that conceivably falls within the terms of the policy, no duty to defend arises." Marvisi v. Greenwich

Ins. Co., No. 04-cv-6733, 2006 WL 1422693, at *4 (S.D.N.Y. May 23, 2006). Accordingly, in determining whether Travelers has a duty to defend, this Court compares the allegations in the Charney Action with the terms of the Policies. See Int'l Bus. Mach. Corp., 363 F.3d at 144.

An "advertising injury" under the Policies includes injury caused by "[o]ral or written publication, including publication by electronic means, of material in your 'advertisement' that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or that "[u]nreasonably places a person in a false light." (See Travelers' Rule 56.1 Response ¶ 14; Martin Decl., Ex. C, at 24.) An "advertisement" is defined in turn as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (See Travelers' Rule 56.1 Response ¶ 15; Martin Decl., Ex. C, at 25.)

Here, there can be no dispute that the Charney Action claims that the December 2014 Statement defamed Charney and placed him in a false light. (See Martin Decl., Ex. E, ¶¶ 47–60.) Instead, the crux of the parties' disagreement is whether the December 2014 Statement constitutes an "advertisement" by Standard General.[1] The definition of "advertisement" under the Policies is unambiguous and can be interpreted based on its "plain and ordinary meaning." Selective Ins. Co. of Am., 47 N.E.3d at 461. To constitute an "advertisement" under the Policies then, the December 2014 Statement must be (1) about Standard General's goods, products, or services; and (2) made for the purpose of attracting customers or supporters.

Standard General posits that as an investment fund, its services consist of

---

[1] Travelers cites a throng of cases from various jurisdictions interpreting the meaning of "advertising" or "advertising activities" in the absence of an explicit definition in the applicable policies. But here, the Policies expressly define "advertisement." Thus, Travelers' cases are inapt.

identifying and investing in distressed companies and making them profitable. Standard General's theory is that the December 2014 Statement therefore constitutes an "advertisement" because it was meant to allay its investors' concerns regarding American Apparel and to promote further investment in its fund. This Court declines to adopt Standard General's interpretation of the December 2014 Statement. State of N.Y. v. AMRO Realty Corp., 936 F.2d 1420, 1428 (2d Cir. 1991) (declining to obligate an insurer to extend coverage "based on a reading of the complaint that is linguistically conceivable but tortured and unreasonable"). While Standard General's services may certainly be as it suggests, the December 2014 Statement is not "about" the "goods, products, or services" that Standard General provides. It does not, for example, tout the expertise of Standard General's employees, call attention to its investment services, or express hope that customers continue to invest in Standard General. See, e.g., Berman v. Gen. Accident Ins. Co. of Am., 671 N.Y.S.2d 619, 624 (N.Y. Sup. Ct. 1998). Rather, the December 2014 Statement is an informative statement by Standard General sent to press outlets clarifying the company's stance on Charney's employment and the circumstances and propriety of his termination by American Apparel's Board of Directors.

        Moreover, the parties' submissions from the Charney Action undercut Standard General's position that the purpose of the December 2014 Statement was to attract customers or supporters. Indeed, the exhibits attached to the Charney Action complaint describe the December 2014 Statement as an e-mailed statement made in response to Charney's accusations of betrayal and foul play by Standard General in orchestrating his ouster. See Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 679 N.E.2d 1044, 1049 (N.Y. 1997) (explaining that a court may "look to formal submissions in the current or underlying litigation to confirm or clarify the nature of the underlying claims"). Moreover, this Court is not persuaded

by Standard General's contention that the purpose of the December 2014 Statement was to attract customers who were "pulling their money" because they were "expressly concerned about Standard General's investment in American Apparel" and its association with Charney. (See 7/14/17 Oral Arg. Hr'g Tr., ECF No. 36, at 7:18–8:16.) While the Charney Action alleges that Standard General informed Charney that some of its investors had withdrawn their investment and expressed concern about its association with Charney, these statements were allegedly made to induce Charney into "settling" with American Apparel in or around June 2014—months before the December 2014 Statement was released. (See Martin Decl., Ex. E, ¶¶ 18–19.)

Additionally, Standard General points out that the Charney Action includes a claim for false advertising to support its contention that the December 2014 Statement meets the Policies definition of "advertisement." Section 17500 of California's Business and Professions Code makes it unlawful for "any person, firm, corporation or association, or any employee thereof" to publicly make or disseminate an untrue or misleading statement regarding the disposition of property or performance of services. Cal. Bus. & Prof. Code § 17500. While a statement that is actionable under § 17500 may conceivably relate to "goods, products or services," it does not follow that a complaint that pleads a claim under § 17500 will necessarily allege a statement "made for the purpose of attracting customers or supporters." (See Travelers' Rule 56.1 Response ¶ 15; Martin Decl., Ex. C, at 25.)

The factual averments in the Charney Action do not support a finding that the December 2014 Statement concerned Standard General's "goods, products, and services," or that it was "made for the purpose of attracting customers." The mere fact that the underlying action contains a claim for false advertising does not allow Standard General to circumvent the Policies' unambiguous definition of "advertisement." Parks Real Estate Purchasing Grp., 472

F.3d 33, 42 (2d Cir. 2006) ("When the provisions are unambiguous and understandable, courts are to enforce them as written."). In conclusion, the December 2014 Statement is not an "advertisement," and consequently, the Charney Action does not allege an "advertising injury."

    III.    Whether the Employment-Related Practices Exclusion Bars "Personal Injury" Coverage

Standard General asserts in the alternative that the Charney Action allegations give rise to a covered "personal injury." The parties dispute whether the Policies' ERP exclusion applies. Under New York law, the insurer bears the burden of demonstrating that a policy exclusion negates coverage. Seaboard Sur. Co., 476 N.E.2d at 275. To do so, it must show that the language of the exclusion is "clear and unmistakable," and that the exclusion is "subject to no other reasonable interpretation" and applies in the particular case. Seaboard Sur. Co., 476 N.E.2d at 275–76; see also Cont'l Cas. Co., 609 N.E.2d at 512. Exclusions must also be "accorded a strict and narrow construction," and may not be "extended by interpretation or implication." Seaboard Sur. Co., 476 N.E.2d at 275; Auto. Ins. Co. of Hartford v. Cook, 850 N.E.2d 1152, 1156 (N.Y. 2006). Ambiguities in an insurance policy must be construed against the insurer, particularly when they are found in an exclusion. Farm Family Cas. Ins. Co. v. Habitat Revival, LLC, 938 N.Y.S.2d 126, 128 (N.Y. App. Div. 2012).

The Policies define "personal injury" to include injury caused by "[o]ral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," or that "[u]nreasonably places a person in a false light." (See Travelers' Rule 56.1 Response ¶ 16; Martin Decl., Ex. C, at 24–25.) Both Policies contain an ERP exclusion, which provides in relevant part that the insurance does not apply to "personal injury" to "[a] person arising out of any: (a) Refusal to employ that person; (b) Termination of that person's employment; or (c)

-11-

Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . . ."  (Steiner Aff. Ex. 2, at 84; Martin Decl., Ex. C, at 9.)  The Policies clarify that the ERP exclusion applies "(1) Whether the insured may be liable as an employer or in any other capacity . . . ."  (Steiner Aff. Ex. 2, at 84; Martin Decl., Ex. C, at 9.)

Neither party seriously disputes that the Charney Action alleges a "personal injury" caused by the December 2014 Statement's assertion that Standard General "supported the independent, third-party and very thorough investigation into the allegations against Mr. Charney, and respect[s] the Board of Director's decision to terminate him based on the results of that investigation."  (See Martin Decl., Ex. E, ¶¶ 1, 43–44.)  But this does not end the analysis.  Travelers argues that even if the Charney Action alleges a "personal injury," the Policies' ERP exclusion bars coverage because it carves out certain "employment-related" personal injuries from "personal injury" coverage, whether Standard General is an employer or in any other capacity.  Standard General counters that the ERP exclusion does not apply because (1) there are no allegations of any former, current, or prospective employment relationship between Standard General and Charney; and (2) because the allegations that give rise to coverage do not relate to any employment practices undertaken by Standard General.

Travelers has not satisfied its burden to demonstrate that the ERP exclusion applies.  As an initial matter, the ERP exclusion does not explicitly require any employment relationship between the injured party and the insured.  Rather, the Policies exclude coverage for "personal injury" to "[a] person arising out of any: (a) Refusal to employ that person; (b) Termination of that person's employment; or (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation,

harassment, humiliation or discrimination directed at that person . . . ." (Steiner Aff. Ex. 2, at 84; Martin Decl., Ex. C, at 9.) As a matter of law, the ERP exclusion does not "clear[ly] and unmistakabl[y]" apply to situations where the injured party lacks any employment relationship with the insured. The Policies do not define the term "person." Although that term may certainly be interpreted literally and broadly to mean <u>any</u> individual in the universe who suffers an employment-related "personal injury," the term could also reasonably be construed to refer to only those who have some former, current, or prospective employment relationship with the insured. The fact that other courts have also construed identical ERP exclusions to apply only to claims by former, current, or prospective employees of the insured is persuasive in finding that Standard General's interpretation is reasonable. <u>E.g.</u>, <u>Kelleher v. Admiral Indem. Co.</u>, 958 N.Y.S. 2d 308 (Table), 2010 WL 3293715 (N.Y. Sup. Ct. 2010).

Travelers contends that the language stating that the ERP exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity" is essentially tantamount to stating that the ERP exclusion applies even when there is no employment relationship between the insured and the injured party.[2] This cannot be the case. The phrase "in any other capacity" does not clearly and unambiguously indicate that the ERP exclusion applies when the injured party is not in an employment relationship with the insured. Moreover, reading this phrase in the manner Travelers suggests is untenable when applied to analogous provisions in the policy. The Primary Policy contains an "Employer's Liability" exclusion, which provides that the policy's coverage for bodily injury and property damage liability does not apply to

---

[2] Travelers relies on <u>Nat'l Football League v. Vigilant Ins. Co.</u> for the proposition that an insurer could effectuate its intent for an employment-related exclusion to apply outside a "direct employment context" by "including language clearly indicating that the exclusion was not limited to the [insured's] liability as an employer." 824 N.Y.S.2d 72, 77 (N.Y. App. Div. 2006). But that discussion is non-binding dicta, and in any case, the ERP exclusion language in this case is neither clear nor unambiguous.

-13-

"[b]odily injury" to "an 'employee' of the insured" arising out of certain enumerated circumstances. (Steiner Aff., Ex. 2, at 58.) Like the ERP exclusion, that exclusion also contains language stating that it applies "[w]hether the insured may be liable as an employer or in any other capacity." (Steiner Aff., Ex. 2, at 58.) If "or in any other capacity" were to mean "or not as an employer," the bodily injury exclusion would be internally inconsistent. See RSUI Indem. Co. v. RCG Grp. (USA), 890 F. Supp. 2d 315, 326 (S.D.N.Y. 2012) (explaining that in interpreting contracts, including insurance contracts, absurd results should be avoided). Finally, as other courts have observed, the phrase may "simply mean that the exclusion applies even if an employee seeks to hold an employer liable in a capacity other than its employer capacity." Kelleher, 958 N.Y.S.2d 308 (Table), 2010 WL 3293715, at *4 (citing Forgues ex rel. Martine v. Heart of Tex. Dodge, 668 N.W.2d 562 (Table), 2003 WL 21801424 (Wis. Ct. App. 2003)).

The language of this ERP exclusion is ambiguous, and both sides have colorable arguments to support their positions. But exclusions must be interpreted narrowly, and ambiguities as to the scope of the exclusion construed against the insurer. Thus, Travelers has not shown that the ERP exclusion is "subject to no other reasonable interpretation." Seaboard Sur. Co., 476 N.E.2d at 275. On the other hand, Standard General has articulated a reasonable interpretation that there must be a former, current, or prospective employment relationship between Standard General and Charney for the ERP exclusion to apply.

Travelers suggests—for the first time at oral argument—that even if the ERP exclusion requires a former, current, or prospective employment relationship between the injured party and the insured, Standard General was the equivalent of an employer by orchestrating Charney's termination through American Apparel's Board of Directors. Standard General maintains that there are no allegations in the Charney Action that Charney was a former, current,

or prospective employee of Standard General.

This Court need not consider an argument raised for the first time at oral argument. See, e.g., Process Res. Corp. v. Delta Air Lines, Inc., No. 98-cv-5648, 2000 WL 145114, at *7 (S.D.N.Y. Feb. 3, 2000) ("The fact that the argument of estoppel was raised for the first time at oral argument would be reason enough to dismiss it."); Yesil v. Reno, 958 F. Supp. 828, 844 n.11 (S.D.N.Y. 1997) (declining to consider argument made for the first time at oral argument). Nonetheless, even if Standard General had the power to indirectly terminate Charney, it does not follow that Charney was an employee of Standard General as a matter of law. Cf. Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 839, 864 (S.D.N.Y. 1994) (observing that, in the context of the corporate purchase of another corporation's outstanding stock, "an employment relationship does not automatically arise between the corporate purchaser of the shares of another corporation and the employees of the purchased corporation"). Accordingly, the ERP exclusion is inapplicable.

## CONCLUSION

Standard General's motion for summary judgment is granted, and Travelers' motion for summary judgment is denied. The Clerk of Court is directed to terminate the motions pending at ECF No. 24 and ECF No. 31. The parties are directed to submit a proposed final judgment consistent with this Opinion and Order by August 25, 2017.

Dated: August 18, 2017
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.